Filed 9/12/23  Look-Yan v. Mazda Motor Corp. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GAIL LOOK-YAN, Plaintiff and Appellant, v. MAZDA MOTOR CORPORATION, Defendant and Respondent. | D080058 (Super. Ct. No. 37-2018-00008807-CU-PL-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Singleton Schreiber, Brett J. Schreiber, Benjamin Israel Siminou and Harini P. Raghupathi for Plaintiff and Appellant.

Horton, Oberrecht & Kirkpatrick and Michael D. Marchesini for Defendant and Respondent.

Plaintiff and appellant Gail Look-Yan appeals from an order granting a motion to quash service of summons of her first amended complaint in favor of defendant and respondent Mazda Motor Corporation (Mazda Corporation), a Japanese corporation with its principal place of business in Japan.  In her unverified pleading, plaintiff alleged that she suffered severe injuries in an

automobile accident within San Diego County in her Mazda Miata, which Mazda Corporation distributed into the United States in cooperation with Mazda Motor of America, Inc. (Mazda America), a California corporation with its principal place of business in Irvine, California. The trial court ruled the evidence did not establish Mazda Corporation purposefully availed itself of the privilege of conducting activities in California so as to be haled into court here. Plaintiff contends the court erred because Mazda Corporation is subject to specific personal jurisdiction by both indirectly and directly serving the California market for its vehicles. According to her, Mazda Corporation purposefully availed itself of a California forum by selling the vehicle to Mazda America, putting it into the stream of commerce with the expectation it would be sold to California customers and thereby indirectly serving the California market. She argues Mazda Corporation also took direct steps to serve the California market by designing the vehicle's engines to comply with California emissions standards, and by securing a certification from the California regulatory authority. Plaintiff contends her claims are related to Mazda Corporation's California-based activities as they arise from Mazda Corporation's contract with Mazda America to ship the vehicle to California, Mazda America's sale of the vehicle to a San Diego authorized dealer from whom she purchased the vehicle, and an in-state accident in which the vehicle caused her injuries. Finally, plaintiff contends Mazda Corporation cannot show that personal jurisdiction would be unfair and unreasonable.

We affirm. It was plaintiff's burden to establish facts justifying the exercise of personal jurisdiction over Mazda Corporation. But on our de novo review of Mazda Corporation's motion and the related papers, there is a fatal omission in her attempt to meet this burden: admissible evidence of the basic foundational facts about plaintiff's residence, her vehicle purchase, the

2

accident and its alleged California location. Such facts are contained only in plaintiff's unverified first amended complaint or opposing points and authorities; the record lacks a sworn affidavit, or authenticated documentary evidence, concerning these matters. We cannot presume the truth of plaintiff's unsworn allegations and assertions. Even if plaintiff may have presented evidence that Mazda Corporation engaged in forum contacts such that it purposefully availed itself of the benefits of California law, a question we ultimately do not decide, she has not met her burden to establish with competent evidence her claims arise out of or relate to Mazda Corporation's California contacts.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2016, plaintiff allegedly sustained injuries after she was involved in a car accident while driving a 1995 Mazda MX-5 Miata (at times, the subject vehicle).[1] Mazda Corporation, a Japanese corporation with its only headquarters and principal place of business in Japan, manufactured the vehicle in Japan. It was responsible for the design and testing of that model vehicle, but did not design, crash test, or manufacture the subject vehicle in California. Mazda Corporation has never designed, crash tested, or manufactured any Mazda vehicles in this state. Mazda Corporation did not sell the vehicle to plaintiff; rather, it sold the vehicle in Japan to Mazda America, which transported plaintiff's vehicle into the United States. Mazda

---

[1] The sole declaration in the record before us concerning plaintiff's accident is that of Mazda Corporation's staff manager for its legal affairs department, Osamu Yamashina. It is carefully worded. He says: "I understand that Plaintiff filed the above-captioned lawsuit against [Mazda Corporation] and others seeking damages for alleged injuries sustained in a 1995 Mazda MX-5 Miata, VIN JM1NA3533S0604751 . . . arising from an incident which occurred on February 26, 2016."

Corporation had no control over when or where the vehicle was ultimately distributed or sold to consumers.

Plaintiff eventually filed a first amended complaint for negligence and strict liability against both Mazda America and Mazda Corporation. The operative complaint is unverified. In part, she alleged the front airbag system in the subject vehicle was defectively designed and manufactured in that it had an excessively forceful inflator, which caused her lost vision and brain injury.

Mazda Corporation, specially appearing, moved to quash service of summons on grounds it had insufficient contacts with California and thus the court lacked general and specific personal jurisdiction over it. It submitted Yamashina's declaration. In addition to the facts related to Mazda vehicles' manufacture, design and testing, Yamashina averred that Mazda Corporation did not design or manufacture the vehicle model with features specific for the California market. Yamashina stated Mazda America—a "separate compan[y]" with "separate business operations"—paid for the shipping costs and the insurance policy for the subject vehicle's transport from Japan to the United States. He averred the vehicle's ownership transferred to Mazda America while the car was being transported to the United States, leaving Mazda Corporation without control over distribution and sale, and thus Mazda Corporation argued there was no basis for the court to exercise specific jurisdiction over it. Yamashina additionally averred that Mazda Corporation:

- never had any involvement in the sale or delivery of any goods in California, including the subject vehicle;

- never conducted business within California, and does not have a California office, plant, or other California business location;

- does not own, lease, or possess any real or personal property in California;

- is not registered in or licensed by the State of California;

- has no agent for service of process within the State of California; and

- has no telephone, facsimile number, mailing address, or presence, whether electronic media, website or otherwise, within California.

Yamashina stated that while Mazda Corporation maintained a general website for the company in Japan, it was "not directed towards the State of California." He also stated that Mazda Corporation did not maintain bank accounts in California and did not have any other financial relationship with the state, and did not pay taxes or direct advertising to the state. According to Yamashina, Mazda Corporation and Mazda America respected their corporate formalities.

Plaintiff opposed the motion, supported by her counsel's declaration. She argued Mazda Corporation was subject to the court's specific personal jurisdiction; that it "purposefully availed itself of the benefits of the lucrative California market when it manufactured and placed in commerce—through its California subsidiary and network of California dealers—the subject vehicle for direct sale in California." (Some capitalization omitted.) Contrary to Yamashina's assertion, plaintiff argued Mazda designed and manufactured its vehicles for direct sale to the California market, and purposefully availed itself of forum benefits by marketing the vehicle through Mazda America, a California corporation and distributor with its principal place in California, which agreed to serve as Mazda's sales agent in California. She asserted that Mazda Corporation had "regularly appeared in California Courts over the last 20 years without objection." Plaintiff's counsel sought to present Mazda sales figures in the United States via what he characterized as automobile

5

industry Web sites and California dealer information via a "www.mazdausa.com" Web site. He averred that Mazda Corporation had appeared as a litigant in California state courts on at least 89 occasions since the mid-1990's, and only in the past few years had started bringing jurisdictional challenges.

In reply, Mazda Corporation argued that plaintiff failed to meet her burden of demonstrating facts by a preponderance of evidence to justify the exercise of jurisdiction. Citing authorities, it maintained plaintiff's burden was to present competent evidence in affidavits and authenticated documents; and plaintiff's unverified complaint could not be considered an affidavit supplying necessary jurisdictional facts. More specifically, Mazda Corporation pointed out that plaintiff in her opposing papers asserted: (1) "The vehicle was imported and distributed by Mazda America"; (2) "The vehicle was sold as a new vehicle by John Hine Mazda a California business located in San Diego, California"; (3) "The subject vehicle was purchased as a new vehicle by the plaintiff who is a California resident and who drove the subject vehicle almost exclusively on California's roadways"; and (4) "The subject incident and the resulting injuries and damages occurred in California." (Some capitalization omitted.) However, Mazda Corporation argued plaintiff "fail[ed] to provide any competent evidence in support of those 'facts[ ]' " and none demonstrated any actions or conduct on its part.

Following a continuance in which she conducted additional jurisdictional discovery, plaintiff filed sur reply papers, again supported by her counsel's declaration. Among other exhibits, counsel appended a

California Air Resources Board (CARB)[2] executive order certifying that 1995 model-year emission control systems for Mazda Corporation vehicles, including the Mazda MX-5 Miata, complied with various CARB emissions standards. In part, the document states "[t]hat the vehicle manufacturer is certifying the listed vehicle models to the aforementioned exhaust emission standards based on its submitted plan to comply with the fleet average NMOG[3] exhaust mass emission requirements as set forth in 'California Exhaust Emission Standards and Test Procedures for 1988 and Subsequent Model Passenger Cars, Light-Duty Trucks, and Medium-Duty Vehicles[.']" Based on that evidence, as well as Mazda Corporation's use of Mazda America as an importer/distributor of its vehicles, plaintiff argued it was undisputed that Mazda Corporation designed and manufactured the subject vehicle for "specific original sale" in California. (Emphasis omitted.) In particular, she argued Mazda Corporation "specifically applied for and was granted authorization to engage in the original sale of Mazda MX-5 Miata's [*sic*] on the condition that it complied with a host of California-specific vehicle emissions standards." According to plaintiff, contrary to Yamashina's declaration, Mazda Corporation "had every intention of complying with California-specific emissions standards, certified its engine block and component parts specifically for the California market and clearly and unequivocally targeted the California market." Plaintiff's counsel stated that

2 "CARB is a statewide regulatory body that California law designates as 'the air pollution control agency for all purposes set forth in federal law.'" (*Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.* (2004) 541 U.S. 246, 250-251, quoting Health & Saf. Code, § 39602.)

3 NMOG is an acronym for non-methane organic gases. (See Cal. Code Regs., tit. 13, § 1960.1.)

the court could consider the executive order as an official record under Evidence Code section 1280.[4]

In response, Mazda Corporation repeated its argument about plaintiff's evidentiary burden, stating: "In her sur-reply brief, plaintiff has still failed to meet her burden of demonstrating facts, by a preponderance of the evidence, through 'competent evidence in affidavits and authenticated documentary evidence' that [Mazda Corporation] 'has purposefully availed [itself] of forum benefits with respect to the matter in controversy' and that 'the controversy is related to or arises out of [Mazda Corporation's] contacts with the forum' of California." (Some capitalization omitted.) Additionally, Mazda Corporation disputed plaintiff's characterization of the sur-reply evidence. It argued the subject vehicle was designed to meet emissions standards for the United States, presenting a declaration from Mazda America's manager of vehicle emissions certification and compliance that the 1995 Mazda MX-5 Miata was "designed to meet the emissions standards for all 50 states, not just California" and that the "exhaust emissions control systems in [those] vehicles sold in California were the same as [those] sold in each of the other 49 states." Mazda Corporation asked the court to reject plaintiff's argument that it targeted the California market through the emissions control system design and thereby purposefully availed itself of California forum benefits.

Mazda Corporation further argued that even assuming the CARB request could be a contact with California, the controversy was unrelated to

---

[4] Counsel also submitted Mazda Corporation's discovery responses in which it represented that with respect to California locations, it did not have possession of information or documents as to the 1990 to 1995 total sales of its Mazda vehicles, and particularly Mazda Miata vehicles, to Mazda America. However, Mazda Corporation did answer interrogatories about the number of active California Mazda authorized dealers in those years (86 in 1990, 98 in 1991, 108 in 1992, 109 in 1993, 105 in 1994 and 104 in 1995).

and did not arise out of it, as plaintiff alleged she was injured due to a defective air bag system, not the vehicle's exhaust emission control system. Mazda Corporation maintained the assertion of specific jurisdiction would not comport with notions of fair play and substantial justice because the CARB certification request pertained to a component that was not at issue in the case, and thus it was not a " 'meaningful "contact, tie, or relation" ' with the State of California . . . ." Finally, Mazda Corporation argued the CARB document was inadmissible in any event as hearsay, unauthenticated, and supported only by counsel's unsubstantiated opinions. It submitted objections to the CARB document, as well as the attorney declaration submitted with plaintiff's sur-reply papers, on those and other grounds.

After considering arguments, the trial court granted the motion. Without addressing Mazda Corporation's evidentiary objections, it ruled plaintiff's evidence of Mazda Corporation's CARB certification request was "not . . . enough to show purposeful availment such that [Mazda Corporation] may be haled into court in California." The court reasoned: "[Mazda Corporation] has never had any involvement in the sale or delivery of goods in California, does not have any business location or property in California, is not registered or licensed in California, has no agent for service of process in California, has no California-based contact, no California accounts, does not pay any California taxes, and has no advertising in California."

Plaintiff filed this appeal from the order.

## DISCUSSION

### I. *Standard of Review*

We apply settled review standards: Where a court resolves evidentiary conflicts in determining personal jurisdiction, we will not disturb its express or implied factual findings if supported by substantial evidence. (*Preciado v.*

9

*Freightliner Custom Chassis Corporation* (2023) 87 Cal.App.5th 964, 975 (*Preciado*); *Buchanan v. Soto* (2015) 241 Cal.App.4th 1353, 1362.) " ' "When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." ' " (*Preciado*, at p. 975, quoting *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273, abrogated on another ground as stated in *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 369-370, 372; see also *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.)

The parties dispute whether independent or substantial evidence review applies. Plaintiff contends this court must independently review the court's order quashing the summons on Mazda Corporation because there is no conflict in the evidence. Mazda Corporation suggests the lower court did resolve conflicts and thus a different standard applies. It maintains when declarations presented on the motion to quash are conflicting, we do not disturb the court's resolution of the conflict if its decision is supported by substantial evidence.

But Mazda Corporation does not squarely identify factual conflicts in the evidence. It points out plaintiff's *argument* that it used Mazda America as a sales agent or marketed the subject vehicle was contradicted by Yamashina's declaration stating Mazda Corporation did not distribute the vehicle in the United States or direct any advertising to California. At best, Mazda Corporation raises disputes over inferences that plaintiff seeks to draw from undisputed evidence (i.e., the CARB order), or the legal significance of undisputed facts. Even if there are disputed facts on the jurisdiction issue, appellate courts "review independently the trial court's conclusions as to the legal significance of the facts." (*SK Trading*

10

*International Co. Ltd. v. Superior Court of San Francisco County* (2022) 77 Cal.App.5th 378, 387 (*SK Trading*).)

In our view, the trial court's ruling that the CARB evidence—in combination with Mazda Corporation's lack of a California presence—was not "enough" to subject Mazda Corporation to personal jurisdiction, is a legal conclusion drawn from undisputed evidence. Because the court did not resolve factual disputes in assessing the evidence as to Mazda Corporation's connections with California or absence thereof, and what is in dispute is the legal significance of certain facts, we review the record independently. (Accord, *Preciado*, *supra*, 87 Cal.App.5th at p. 975; *SK Trading*, *supra*, 77 Cal.App.5th at p. 387.)

II. *Plaintiff's Claim that Mazda Corporation Forfeited its Evidentiary Objections*

Throughout its respondent's brief, Mazda Corporation attacks the competence or admissibility of plaintiff's attorney's declaration and attached exhibits, reiterating its evidentiary objections presented in the trial court.[5] Its arguments concerning these matters, however, are without necessary separate headings (Cal. Rules of Court, rule 8.204(a)(1)(B)), reasoned legal argument or citation to authorities. As a result, plaintiff maintains that Mazda Corporation has forfeited its evidentiary objections by failing to

---

[5] Mazda Corporation does not explain how we are to treat the trial court's silence on its evidentiary objections. In the summary judgment context, when a court does not expressly admit or exclude challenged evidence, we presume the evidentiary objections have been overruled, the court considered the evidence on the motion's merits, and the objections are preserved on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531-532.) On appeal, the burden is then on the objecting party to renew any objections in the appellate court. (*Ibid.*) We do not decide whether this same standard applies in this context, as Mazda Corporation does not address the point.

provide developed argument. We agree as to her counsel's averments and the evidence attached to counsel's declaration. (*K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 734, fn. 9 [points are deemed forfeited when supported by citation to statutes without reasoned legal argument or separate headings]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [absence of cogent legal argument or citation to authority allows court to treat contention as waived].)

As for Mazda Corporation's challenge to the CARB executive order, plaintiff asks us to treat Mazda Corporation's hearsay objection as implicitly overruled. Because the court's ruling on the motion to quash indicates it considered the CARB certification evidence, we agree it impliedly overruled Mazda Corporation's objections. We thus consider plaintiff's counsel's declaration as well as the CARB order itself.

We reach a different conclusion, however, with regard to Mazda Corporation's arguments concerning plaintiff's evidentiary burden. On appeal, Mazda Corporation repeats its arguments below and cites authority for the proposition that plaintiff bears a burden to demonstrate facts justifying the exercise of jurisdiction by a preponderance of the evidence, via "competent evidence in affidavits and authenticated documentary evidence." It argues plaintiff failed to make reference to any such evidence. Citing *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, it argues "[a]n unverified complaint may not be considered as an affidavit from [p]laintiff supplying necessary jurisdictional facts." These arguments preserve Mazda Corporation's objections on these grounds.

Plaintiff correctly acknowledges it is her burden to demonstrate facts showing such minimum contacts as to justify the exercise of jurisdiction as to two factors: that Mazda Corporation has purposefully availed itself of the

forum and that her claims relate to or arise out of its forum-related contacts. (*LG Chem, Ltd. v. Superior Court of San Diego County* (2022) 80 Cal.App.5th 348, 361 (*LG Chem*); *Preciado, supra*, 87 Cal.App.5th at pp. 975-976.) But she does not address the quality of the evidence or whether her unverified allegations suffice. As we will explain, this deficiency is fatal to her efforts to establish jurisdiction over Mazda Corporation.

### III. *Legal Principles of Specific Personal Jurisdiction*

"Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.' [Citation.] California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the [United States] Constitution." (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 125.) " 'The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " ' " (*Snowney v. Harrah's Entertainment, Inc., supra*, 35 Cal.4th at p. 1061; *Ford Motor Company v. Montana Eighth Judicial District Court* (2021) ___U.S. ___, ___ [141 S.Ct. 1017, 1024] (*Ford Motor*).) Under this formulation, courts focus on "the nature and extent of 'the defendant's relationship to the forum State,' " leading to the recognition of two types of personal jurisdiction, general (or "all-purpose") and specific (or "case-linked") jurisdiction. (*Ford Motor*, 141 S.Ct. at p. 1024; see also *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* (2017) 582 U.S 255, 262 (*Bristol-Myers*).)

Only "case-linked" specific jurisdiction is at issue in this appeal.[6] "[S]pecific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." ' [Citation.] For a state to assert specific jurisdiction, the defendant 'must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." [Citation.] The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." [Citation.] They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. [Citation.] Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims . . . "must *arise out of or relate to* the defendant's contacts" with the forum.' " (*LG Chem, supra,* 80 Cal.App.5th at p. 361, quoting *Ford Motor*, *supra*, 141 S.Ct. at pp. 1024-1025; see also *Bristol-Myers*, *supra*, 582 U.S. at p. 262.) "In other words, there must be 'an

_____

[6] In her opening appellate brief, plaintiff does not argue Mazda Corporation is subject to general jurisdiction, which is properly exercised when a defendant is " ' "essentially at home" ' " in a state. (*Ford Motor, supra*, 141 S.Ct. at p. 1024.) More specifically, a nonresident corporation may be subject to the general jurisdiction in the forum if its " ' "affiliations with [the forum state] are so 'continuous and systematic' as to render [it] essentially at home [there]." ' " (*Preciado, supra*, 87 Cal.App.5th at pp. 976-977, quoting *Daimler AG v. Bauman, supra,* 571 U.S. at p. 139.) "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." (*Bristol-Myers*, *supra*, 582 U.S. at p. 262.) We note that plaintiff changes her position in her reply brief, asserting "the fact that Mazda America is a California company is sufficient to subject Mazda [Corporation] to *general jurisdiction* in California, let alone find purposeful availment." We disregard the argument about general jurisdiction made for the first time in reply. (*K.M. v. Grossmont Union High School Dist.*, *supra*, 84 Cal.App.5th at p. 734, fn. 9.)

14

affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' [Citation.] For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " (*Bristol-Myers*, at p. 262; see also *Ford Motor*, at p. 1025.)[7]

The United States Supreme Court has recently observed that the above rules "derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.' " (*Ford Motor*, *supra*, 141 S.Ct. at p. 1025.) Specific jurisdiction is "founded . . . on an idea of reciprocity between a defendant and a State: When (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the benefits and protection of [its] laws'—the State may hold the company to account for related misconduct." (*Ibid*.) It similarly provides defendants with " 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.' [Citation.] A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." (*Ibid*.)

---

7        This court in *David L.* (*David L.*, *supra*, 29 Cal.App.5th at p. 374, fn. 8) recognized that *Bristol-Myers, supra,* 582 U.S 255 cast doubt on the California Supreme Court's previous " ' "sliding scale" ' " specific jurisdiction test in which the court required only a " 'substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.' " (See *Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1068, quoting *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 456, see also *Vons*, at p. 452 ["[F]or the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related"]; accord, *Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 400.) We apply the formulations used by *Ford Motor*.

*Ford Motor* involved products liability cases stemming from car accidents in Montana and Minnesota and a claim by the defendant, Ford Motor Company (Ford), that the court lacked specific jurisdiction over it in those states.  Ford conceded it did substantial business and sought to serve the market for cars and related products in Montana and Minnesota, and thus had " 'purposefully avail[ed] itself of the privilege of conducting activities' in both places." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1026.)  But it argued it could not be subject to personal jurisdiction there because there was no causal link between its in-state activities and the plaintiffs' claims; its position was that jurisdiction attached " 'only if the defendant's forum conduct *gave rise* to the plaintiff[s'] claims.' " (*Id*. at p. 1026.)

The United States Supreme Court rejected that argument, and in doing so, discussed paradigmatic cases of specific jurisdiction that happened to involve vehicle manufacturers. (*Ford Motor*, *supra*, 141 S.Ct. at pp. 1026-1028.)  Pointing out that the rule required that the plaintiff's lawsuit arise out of *or relate to* the defendant's forum contacts, the court explained, "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." (*Ibid.*)  The court had "never framed the specific jurisdiction ]inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." (*Id*. at p. 1026.)  It continued: "That does not mean anything goes.  In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendant foreign to a forum." (*Ibid.*)

*Ford Motor* invoked language from *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286 (*World-Wide Volkswagen*):  "[T]his Court has stated that specific jurisdiction attaches in cases identical to the ones here—

16

when a company like Ford serves a market for a product in the forum State and the product malfunctions there. In *World-Wide Volkswagen*, the Court held that an Oklahoma court could not assert jurisdiction over a New York car dealer just because a car it sold later caught fire in Oklahoma. [Citation.] But in so doing, we contrasted the dealer's position to that of two other defendants—Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer (neither of which contested jurisdiction): [¶] '[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.' [Citation.] [¶] Or said another way, if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York. . . . [A] company thus 'purposefully avail[ing] itself' of the Oklahoma auto market 'has clear notice' of its exposure in that State to suits arising from local accidents involving its cars." (*Ford Motor*, *supra*, 141 S.Ct. at pp. 1026-1027.)

The court pointed out that its other cases had recited *World-Wide Volkswagen*'s language to conclude that "when a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s]' to defend actions 'based on' products causing injury there." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1027, quoting *Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 781 and citing *Goodyear Dunlop Tires Operations* (2011) 564 U.S. 915,

17

927 (*Goodyear Dunlop*) and *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County* (1987) 480 U.S. 102, 110 (*Asahi Metal*).) It further illustrated use of the "paradigm" (*Ford Motor*, at p. 1027) Audi/Volkswagen specific jurisdiction scenario in a case involving Daimler, a German automobile manufacturer headquartered in Germany: "A California court would exercise specific jurisdiction 'if a California plaintiff, injured in a California accident involving a Daimler-manufactured vehicle, sued Daimler [in that court] alleging that the vehicle was defectively designed.' " (*Ford Motor*, at p. 1028, quoting *Daimler AG v. Bauman, supra,* 571 U.S. at p. 127, fn. 5.) "As in *World-Wide Volkswagen*[, *supra*, 444 U.S. 286], the Court did not limit jurisdiction to where the car was designed, manufactured, or first sold." (*Ford Motor*, at p. 1028.)

Assessing how "[a]ll this Montana- and Minnesota-based conduct relates to the claims in these cases, brought by state residents in Montana's and Minnesota's courts," the court concluded there was a strong relationship among Ford, the forum and the litigation: "Each plaintiff's suit, of course, arises from a car accident in one of those States. In each complaint, the resident-plaintiff alleges that a defective Ford vehicle—an Explorer in one, a Crown Victoria in the other—caused the crash and resulting harm. And as just described, Ford had advertised, sold, and serviced those two car models in both States for many years. . . . In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong 'relationship among the defendant, the forum, and the litigation'— the 'essential foundation' of specific jurisdiction. [Citation.] That is why this Court has used this exact fact pattern (a resident-plaintiff sues a global car company, extensively serving the state market in a vehicle, for an in-state

18

accident) as an illustration—even a paradigm example—of how specific jurisdiction works." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1028.) The court clarified that it was not saying specific jurisdiction would attach to persons "using any means to sell any good in a State . . . if the product malfunctions after arrival," pointing out it had "long treated isolated or sporadic transactions differently from continuous ones." (*Id*. at p. 1028, fn. 4.)

Notably, the personal jurisdiction analysis is an "intensely fact-specific" inquiry. (*LG Chem*, *supra*, 80 Cal.App.5th at p. 361 [personal jurisdiction analysis is intensely fact-specific and not susceptible of mechanical application]; *Rivelli v. Hemm, supra,* 67 Cal.App.5th at p. 392, citing *In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 109 [same]; *Luberski, Inc. v. Oleificio F.LLI Amato S.R.L.* (2009) 171 Cal.App.4th 409, 415 ["No California case replicates the fact pattern before us, but several are close enough to aid our analysis"].) With the foregoing principles in mind, we turn to whether plaintiff met her burden to show Mazda Corporation " 'exercise[d] the privilege of conducting activities within [California]'—thus 'enjoy[ing] the benefits and protection of [California's] laws' " (*Ford Motor*, *supra*, 141 S.Ct. at p. 1025; see also *J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 564 U.S. 873, 882 (*Nicastro*)) and that the controversy "arise[s] out of or relate[s] to" (*Ford Motor*, at p. 1025) Mazda Corporation's forum contacts such that the California court may entertain plaintiff's suit.

## IV. *Purposeful Availment*

Plaintiff characterizes this as a textbook or "paradigm" case of specific jurisdiction. She points out she is a California resident, injured in California by a defective Mazda purchased from an authorized Mazda California dealership. She argues Mazda Corporation purposefully availed itself of the California market, placing the vehicle into the stream of commerce with the

19

expectation it would be sold to California consumers by (1) selling it to Mazda America, a California importer and distributor that sold the vehicles in California and North America; (2) designing the engines, including that of the subject vehicle, according to California regulatory standards; and (3) securing certification from CARB, the California regulatory authority. She says Mazda Corporation made both "direct and indirect efforts to sell [Miatas] in California" that subjects it to specific personal jurisdiction. According to plaintiff, it makes no difference that Mazda Corporation used a separate company or middleman to distribute and sell its vehicles, but because Mazda America is a California corporation, there is a more compelling case of purposeful availment because it assertedly shows Mazda Corporation "specifically targeted California by engaging (or creating) a California company to distribute its products in California (and beyond)."

In her reply brief, plaintiff places more emphasis on the stream of commerce theory. She argues, citing *World-Wide Volkswagen*, *supra*, 444 U.S. 286, that a manufacturer will purposely avail itself of a forum's market when it "delivers its products into the stream of commerce with . . . the expectation that they will be purchased by consumers in the forum." According to plaintiff, Mazda Corporation's use of Mazda America as its exclusive importer, distributor and retailer of Mazda vehicles at roughly 100

dealerships in California is enough by itself to establish Mazda Corporation's expectation of California sales or intention to serve the California market.[8]

A. *Plaintiff's Stream of Commerce Argument*

Though *Ford Motor* referenced cases that had articulated the so-called stream-of-commerce theory of purposeful availment (*Ford Motor*, *supra*, 141 S.Ct. at p. 1027, citing *Asahi Metal*, *supra*, 480 U.S. 102 & *Goodyear Dunlop*, *supra*, 564 U.S. 915), *Ford Motor* had no occasion to address it. The stream-of-commerce metaphor (*Goodyear Dunlop*, at p. 926; *Nicastro*, *supra*, 564 U.S. at p. 881) typically arises in circumstances where a nonresident defendant, acting outside the forum, places into the stream of commerce a product that causes harm inside the forum. (See *Goodyear Dunlop*, at p. 926; *Nicastro*, at p. 881 [stream of commerce "refers to the movement of goods from manufacturers through distributors to consumers"].)

---

[8] Plaintiff goes on to say that such an intent is "especially clear because Mazda America is a Mazda subsidiary." The evidence plaintiff cites for this proposition—Yamashina's assertion that Mazda Corporation and Mazda America are separate companies with separate business operations who respect corporate formalities—does not in our view establish a parent/subsidiary relationship. In any event, even where such a relationship exists, "purposeful availment requires some manner of deliberately directing the subsidiary's activities in, or having a substantial connection with, the forum state." (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1169; see also *SK Trading*, *supra*, 77 Cal.App.5th at p. 388 [" ' "neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business" ' "].) Plaintiff also cites a 1992 Eastern District of Pennsylvania case, *Gallagher v. Mazda Motor of America, Inc.* (E.D. Pa. 1992) 781 F.Supp. 1079. We disregard plaintiff's reliance on *Gallagher* as she cites it for the first time in reply. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 636.)

In *Nicastro*, a plurality of the court "provide[d] greater clarity" on this doctrine and the "imprecision arising from *Asahi*[, *supra,* 564 U.S. 873]." (*Nicastro*, *supra,* 564 U.S. at pp. 879, 881, (plur. opn. of Kennedy J.).) Justice Kennedy acknowledged the court had previously stated purposeful availment could arise from a defendant placing goods in the stream of commerce " 'with the expectation that they will be purchased by consumers in the forum State' . . . ." (*Id.* at p. 881, quoting *World-Wide Volkswagen, supra,* 444 U.S. at p. 298.) This statement, however, "d[id] not amend the general rule of personal jurisdiction" but merely observed a defendant manufacturer or distributor may be subject to jurisdiction without entering the forum where it " 'seek[s] to serve' a given State's market." (*Nicastro*, at p. 882.) "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." (*Id.* at p. 883.)

Though no single opinion in *Nicastro* garnered five votes, both Justice Kennedy's plurality and Justice Breyer's concurrence rejected the notion that a foreign manufacturer can be sued in any state if it merely knows or reasonably should know its products are distributed through a nationwide distribution system. (*Nicastro, supra,* 564 U.S. at p. 882 ["The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State"]; *id.* at pp. 890-891 (conc. opn. of Breyer, J.) ["I am not persuaded by the absolute approach adopted by the New Jersey Supreme Court . . . . Under that view, a producer is subject to jurisdiction for a products-liability action so long as it 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states' "].)

22

Thus, it is not enough that Mazda Corporation expected its vehicles to be sold in California via a North American distributor. Selling a product to another entity, even with knowledge that the entity will then sell it in California, is not, by itself, purposeful availment. (*Nicastro, supra*, 564 U.S. at pp. 881-883; see also *Bombardier Recreational Products Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 602 ["inquiry into a foreign defendant's purposeful availment . . . must find more than merely entering a product into the stream of commerce with knowledge the product might enter the forum state"]; *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 559.)

B. *The CARB Evidence*

We turn to plaintiff's other arguments, which highlight the evidence that Mazda Corporation obtained CARB certification for various components of its vehicles, including the Mazda Miata at issue. According to plaintiff, Mazda Corporation's design of some of its engines to comply with California emissions standards was a direct step to ensure the sale of cars in California, which " 'invok[ed] the benefits and protections of [California's] laws . . . .' " She argues the CARB approval evidenced Mazda Corporation's expectation that the 1995 Miata at issue would be sold to California consumers and additionally, such approval was a prerequisite such that without it, Mazda Corporation was powerless to realize any profits in California.

Mazda Corporation responds that plaintiff did not meet her burden to establish facts showing it purposefully availed itself of doing business in California. It reiterates—correctly—that plaintiff cannot merely refer to an unverified complaint, but must present " 'competent evidence [of jurisdictional facts] in affidavits and authenticated documentary evidence' " to meet her burden. (*Strasner v. Touchstone Wireless Repair & Logistics, LP*

23

(2016) 5 Cal.App.5th 215, 222 ["The plaintiff must provide specific evidentiary facts, through affidavits and other authenticated documents, sufficient to allow the court to independently conclude whether jurisdiction is appropriate" and "cannot rely on allegations in an unverified complaint or vague and conclusory assertions of ultimate facts"]; *Swenberg v. Dmarcian, Inc.* (2021) 68 Cal.App.5th 280, 291 [same]; see also *BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 428; *In re Automobile Antitrust Cases I & II, supra,* 135 Cal.App.4th at p. 110.)

In addition to arguing it did not design, crash test, or manufacture any Mazda vehicles in California and recounting the facts concerning the vehicle's sale to Mazda America in Japan as well as its lack of control over the ultimate distribution or sale, Mazda Corporation repeats Yamashina's assertion that it "did not design . . . any aspect of the subject vehicle specifically for the California market" and did not "target its products for California." It insists there is "no nexus" between its activities and California, and it "has never purposefully availed itself of any continuous or systematic business in California," thus there is "[n]o evidence" to support a finding of specific jurisdiction.[9]

---

9    Mazda Corporation's argument that it has not purposefully availed itself of "continuous or systematic" business in California does not fully state the appropriate test. (*Daimler AG v. Bauman*, *supra*, 571 U.S. at pp. 138-139.) For purposes of specific jurisdiction, the " 'commission of some single act or occasional acts of [a] corporate agent in a state' may sometimes 'be deemed sufficient to render the corporation liable to suit' on related claims." (*Daimler AG*, at p. 135, fn. 13, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 318.) Corporate entities like Mazda Corporation, of course, are fictions that can act only through their agents, and thus "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." (*Daimler AG*, at p. 135, fn. 13.)

As Mazda Corporation repeatedly emphasizes, it has no physical presence in California. But the question is whether Mazda Corporation deliberately directed business activities toward this state with respect to the vehicles it manufactured, including the Miata, so as to enjoy the benefit of California law, or whether its conduct manifests an intention to either directly or indirectly serve the California market. That Mazda Corporation's sales actually took place in Japan, or its forum activities happened to allow Mazda Corporation to sell in other states, is of no moment. As *Ford Motor* put it in the context of Audi and Volkswagen, "if [Mazda Corporation's] business deliberately extended into [California] (*among other States*), then [California's] courts could hold the compan[y] accountable for a car's [defects] there—*even though the vehicle had been designed and made overseas and sold* [*in Japan*]." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1027, italics added; see also *id* at p. 1028 [the court does "not limit jurisdiction to where the car was designed, manufactured, or first sold"].) We repeat *Ford Motor*'s proposition: " '[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.' " (*Ford Motor*, *supra*, 141 S.Ct. at p. 1027.)

The evidence plaintiff presented via her counsel's declaration is not just that Mazda Corporation sells its vehicles for the United States market to a California-based importer and distributor. It is reasonable to infer from the CARB executive order that Mazda Corporation had agents take steps to obtain California regulatory emissions certification for its vehicles, including

25

the vehicle model allegedly involved in plaintiff's accident. Does this evidence establish deliberate conduct " 'reach[ing] out beyond' [Japan]" and " 'invoking the benefits . . . of [California's] laws' " for the purpose of " 'exploit[ing] a market' " in California? (*Ford Motor*, *supra*, 141 S.Ct. at pp. 1024-1025; *Nicastro*, *supra*, 564 U.S. at p. 882.) Or does it demonstrate only an intention to serve the United States vehicle market, as Mazda Corporation sought to prove? In *Nicastro*, the defendant, a British manufacturer of scrap metal machines, could not be subjected to specific jurisdiction in New Jersey because the plaintiff did not establish it engaged in conduct purposefully directed at that state. (*Nicastro*, *supra*, 564 U.S. at pp. 877, 886.) Though it directed marketing and sales efforts at the United States (*id*. at p. 885), the defendant did not have an office in New Jersey, nor did it pay taxes or own property, advertise or send employees there. (*Id*. at p. 886.) The evidence only showed defendant's distributor agreed to sell defendant's machines in the United States, defendant's officials attended trade shows in several states but not New Jersey, and up to four machines ended up in New Jersey. (*Ibid*.) Justice Kennedy stated "[t]hese facts may reveal an intent to serve the [United States] market, but they do not show that [defendant] purposefully availed itself of the New Jersey market." (*Ibid*.) Thus, New Jersey's exercise of jurisdiction violated due process. (*Id*. at p. 877.)

We do not resolve the issue. "[T]he purposeful availment prong of the specific jurisdiction analysis is not where the most serious deficiencies with plaintiff's jurisdictional claim arise. The more serious problems arise in plaintiff's attempt to establish that [her] claims arise out of or relate to [Mazda Corporation's] contacts with California." (*Preciado*, *supra*, 87 Cal.App.5th at p. 980, some capitalization omitted.) We examine plaintiff's

26

arguments concerning the relationship between the controversy and Mazda Corporation's contacts.

## V. *Relation of Claims to Mazda Corporation's Contacts*

In order to meet her burden, plaintiff must show her claims " 'arise out of or relate to the defendant's contacts with the forum.' " (*Ford Motor, supra*, 141 S.Ct. at p. 1026.) Again, this requires " ' "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." ' " (*Id*. at p. 1025.) The forum contacts need not be causally related to the plaintiff's suit. (*Id*. at p. 1026; see also *Casey v. Hill* (2022) 79 Cal.App.5th 937, 972.)

As mentioned above, plaintiff asserted in her papers opposing Mazda Corporation's motion that "the defective subject vehicle was distributed by Mazda America to John Hine Mazda, a San Diego-based retail seller[ ]. The subject vehicle was sold as a new vehicle in California. The subject vehicle was purchased as a new vehicle by the plaintiff, who is a California resident. The subject vehicle was driven almost exclusively on California roadways. The motor vehicle collision which gives rise to this action occurred in San Diego, California." (Some capitalization omitted.) Pointing in part to *Ford Motor, supra*, 141 S.Ct. 1017, plaintiff similarly argues on appeal that her claims sufficiently relate to Mazda Corporation's California contacts as they arise from a California accident and injuries caused by a vehicle purchased in San Diego after Mazda Corporation contracted with Mazda America to ship the vehicle to this state.

We see nothing in the record establishing these foundational facts. Plaintiff says she "presented evidence" on these and other facts, but does not cite to it. Plaintiff's introduction to her brief asserts the underlying facts are

27

"undisputed." But the record lacks a sworn declaration by plaintiff or any other competent witness stating plaintiff purchased the vehicle new from a San Diego-based Mazda dealer or that she "was injured when a defective airbag in [Mazda MX-5 Miata] unexpectedly deployed during a low-speed, rear-end collision in San Diego," much less that she is or was at the time a California resident.

Some of these facts, as plaintiff being a California resident, are alleged in plaintiff's first amended complaint. But that pleading is unverified, and "[a]n unverified complaint has no evidentiary value in meeting the plaintiff's burden of proving minimum contacts." (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090-1091; see also *Strasner v. Touchstone Wireless Repair & Logistics, LP*, *supra*, 5 Cal.App.5th at p. 222; *Swenberg v. Dmarcian, Inc.*, *supra*, 68 Cal.App.5th at p. 291; *Ziller Electronics Lab GmbH v. Superior Court*, *supra*, 206 Cal.App.3d at p. 1233.) Other facts are contained in plaintiff's memorandum of points and authorities opposing Mazda Corporation's motion. But again, these unsworn assertions do not suffice. (See, e.g., *Hogue v. Hogue* (2017) 16 Cal.App.5th 833, 837-838 [attachment to opposition points and authorities of an unauthenticated email was not *evidence*; it was plaintiff's burden to assert facts in a "*verified* submission"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [citation to points and authorities "obviously is not to admissible evidence in the record"]; *Smith, Smith & Kring v. Superior Court* (*Oliver*) (1997) 60 Cal.App.4th 573, 578.)

Mazda Corporation argued below, and repeats on appeal, that a plaintiff opposing a motion to quash for lack of personal jurisdiction is required to "provide affidavits and other authenticated documents in order to demonstrate competent evidence of jurisdictional facts." (*In re Automobile*

28

*Cases I & II*, *supra*, 135 Cal.App.4th at p. 110.) It argues "[t]he 'affiliation' that due process requires—between the defendant, the forum, and the litigation—is lacking in this case." (Some capitalization omitted.)

We must agree. The omitted background facts are not insignificant matters on this prong of the jurisdiction analysis. *Ford Motor* explained that in *Bristol-Myers*, *supra*, 582 U.S.255, the court had rejected the assertion of jurisdiction over a drug manufacturer given the absence of a connection between the forum and specific claims at issue. (*Ford Motor*, *supra*, 141 S.Ct. at p. 1031.) In *Bristol-Myers*, "[t]he plaintiffs . . . were not residents of California. They had not been prescribed [the drug at issue] in California. They had not ingested [the drug] in California. And they had not sustained their injuries in California." (*Ford Motor*, at p. 1031, citing *Bristol-Myers*, at p. 259.) *Ford Motor* distinguished its facts from *Bristol-Myers*: "[H]ere, the plaintiffs are residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States. In sum, each of the plaintiffs brought suit in the most natural State—based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that t[ook] place' there." (*Ford Motor*, at p. 1031, quoting *Bristol-Myers*, at p 262.) According to *Ford Motor*, in assessing the link between the defendant's forum contacts and the plaintiff's suit, the "relevance [of the place of plaintiff's injury and residence] is a *key part* of *Bristol-Myers*' reasoning." (*Ford Motor*, at p. 1031, italics added.)

In another case involving a California resident's single vehicle truck accident occurring in Oklahoma, the Court of Appeal, in part based on *Ford Motor*, *supra*, 141 S.Ct. 1017, found the requisite link to subject the defendant seller to California jurisdiction. (*Daimler Trucks North America*

29

*LLC v. Superior Court* (2022) 80 Cal.App.5th 946.) In *Daimler Trucks*, the court observed the plaintiff and his wife were both California residents, a fact that weighed in favor of specific jurisdiction. (*Id.* at p. 958.) Further, the plaintiff "also used the allegedly defective subject vehicle in California, as the outbound leg of his travel that resulted in his injuries began in California." (*Ibid.*) The *Daimler Trucks* court likewise distinguished *Bristol-Myers* as differing from its facts "in another significant way." (*Ibid.*) Unlike the plaintiffs in *Bristol-Myers*, who did not seek treatment for their injuries in California and did not claim to have suffered harm in that state, the plaintiff gin *Daimler Trucks* sought "recovery of damages for, among other things, past and future medical expenses and loss of consortium. As [plaintiff] and his wife are California residents, medical expenses will have been incurred in California, and the harm due to the loss of consortium would have been suffered in California." (*Id.* at pp. 958-959.)

An evidentiary showing of these key facts is not present in this case. Thus, even if Mazda Corporation intentionally directed activities to California related to plaintiff's same model vehicle so as to take advantage of California forum benefits, there is no indication plaintiff's vehicle was delivered to a California-based distributor or even sold to plaintiff here as a new vehicle. There are no evidentiary facts concerning the plaintiff's residence, the accident's location, or how the accident occurred. As *Ford Motor* put it, "When a company like [Mazda Corporation] serves a market for a product in a State *and that product causes injury in the State to one of its residents*, the State's courts may entertain the resulting suit." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1022, italics added.) We cannot say that is the case on this record.

Plaintiff's counsel asked for the opportunity to brief this issue. Notwithstanding our view that the parties adequately briefed the matter, we asked them to submit supplemental briefing on the following two questions: "1) Is there admissible evidence in the record that the plaintiff is a California resident, that she purchased the subject vehicle in California, and she was injured in California? [¶] 2) Can the moving party on a motion to quash for lack of jurisdiction (here respondent) waive the requirement that a plaintiff present facts justifying the exercise of jurisdiction with 'affidavits and other authenticated documents in order to demonstrate competent evidence of jurisdictional facts.' (*In re Automobile Antitrust Cases I and II* [, *supra*,] 135 Cal.App.4th [at p.] 110.)" The first question was directed to plaintiff's assertions that she is a California resident, injured in California by a Mazda purchased in California. Plaintiff argues Mazda conceded the accident occurred in California, but points only to Mazda's summary of her allegations about the accident in points and authorities or its briefing on appeal, which is not admissible evidence. We reject plaintiff's waiver arguments. Mazda specifically argued in its initial moving papers below that: "It is plaintiff's burden to establish by a preponderance of the evidence that personal jurisdiction is proper over [Mazda Corporation]. The first amended complaint is devoid of any *evidence* or allegations *that the necessary connections between* [*Mazda Corporation*]*, the forum, and the litigation exist in this case*." (Italics added, some capitalization omitted.) After plaintiff filed her opposition, Mazda Corporation then specifically argued plaintiff had not presented evidence of these jurisdictional facts. We emphasize that specific jurisdiction depends not just on the defendant's contacts (purposeful availment) but *also* on an " ' "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes

31

place in the forum State and is therefore subject to the State's regulation." ' "
(*Ford Motor*, *supra,* 141 S.Ct. at p. 1025, citing *Bristol-Myers*, *supra,* 582 U.S.
at p. 262.)  Plaintiff cites to cases in which a moving party's *affidavits*
established some fact that the plaintiff seeking to establish jurisdiction then
did not need to prove, but points to Mazda's unsworn assertions.[10]  Mazda's
representative's declaration, as we point out (footnote 1, *ante*), was very
carefully worded so as not to admit any of the underlying facts of the accident

[10]     Plaintiff also mentions *Spirits, Inc. v. Superior Court* (1980) 104
Cal.App.3d 918, in which the Court of Appeal observed that "[n]either the
complaint nor any verified declaration submitted by the plaintiff aver[red]
that she was or is now a California resident" but that the defendant
"affirmatively conceded in its moving papers that it believed the plaintiff was
a California resident" and thus "the plaintiff [was] relieved of the burden she
would otherwise have of proving that fact." (*Id*. at p. 920, see also *id*. at p.
922 [plaintiff's California residence was "conceded by [defendant] in its
moving papers below"].)  The Court of Appeal in *Spirits* issued a peremptory
writ of mandate directing the lower court to vacate its order denying the
defendant's motion to quash service for lack of personal jurisdiction, and to
grant the motion to quash.  (*Id*. at p. 927.)  There, it was undisputed that the
defendant did not actually sell the subject merchandise (a soda bottle that
exploded in plaintiff's hand) to the plaintiff in California and did not
consummate any sales in California, related or unrelated to the plaintiff's
particular injury.  (*Id*. at p. 924.)  It was not disputed that the plaintiff's
injury occurred in Arizona.  (*Ibid*.)  Thus, in that case, "neither activity
within the forum nor a related injury within the forum, the two threshold
elements prerequisite to exercise of limited jurisdiction, exist[ed]."  (*Ibid*.)
*Spirits* contains no substantive analysis or extended discussion about the
nature of defendant's concession about the plaintiff's residence, other than to
say it was "affirmative[ ]."  We do not take from *Spirits* a holding that
compels us to view Mazda's summary either in its motion to quash or brief on
appeal as an affirmative concession relieving plaintiff of her burden to
establish such a fact.  "Cases do not stand for propositions that were never
considered by the court."  (*Mares v. Baughman* (2001) 92 Cal.App.4th 672,
679.)

or plaintiff's residence.  There was no contrary *evidence* relieving plaintiff of her burden to establish the requisite jurisdictional facts.

## VI.  *Reasonableness*

Only where a plaintiff makes a showing of purposeful availment and relatedness by a preponderance of the evidence does the burden shift to Mazda Corporation to demonstrate the exercise of jurisdiction would be unfair or unreasonable.  (See *Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1070; *Vons Companies, Inc. v. Seabest Foods, Inc.*, *supra*, 14 Cal.4th at p. 449; *LG Chem, supra*, 80 Cal.App.5th at p. 361; *Strasner v. Touchstone Wireless Repair & Logistics, LP*, *supra*, 5 Cal.App.5th at p. 226 ["If the plaintiff is unable to demonstrate sufficient minimum contacts with the forum to justify jurisdiction, a court is not required to engage in the process of weighing the defendant's inconvenience of litigating in the forum against the plaintiff's interests in suing locally and California's interest in assuming jurisdiction"].)

Having concluded plaintiff has not established the requisite connection between the controversy and Mazda Corporation's contacts so as to subject it to specific jurisdiction in this state, Mazda Corporation was not required to address whether the assertion of jurisdiction is fair.

On our de novo review of the papers submitted on Mazda Corporation's motion to quash, we are compelled to conclude the absence of competent evidence on these fundamental facts defeats plaintiff's claim that Mazda Corporation should be subjected to California personal jurisdiction.

## DISPOSITION

The order is affirmed.


                                                        O'ROURKE, J.


WE CONCUR:



McCONNELL, P. J.



CASTILLO, J.